CELESTINE DEJONA, f. w. c. *v.* STEAMBOAT OSCEOLA, CAPTAIN AND OWNERS.

A defendant must be sued at the place of his domicil, *in personam*, unless he voluntarily submits to the jurisdiction of the court where suit is brought against him.

The words of a law are to be understood in their most known and usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words ; and, where its expressions are dubious, its true meaning is to be discovered by considering the reason and spirit of it, or the cause which induced the legislature to enact it.

The capacity of the plaintiff to stand in judgment must be pleaded in *limine litis*.

A writ of provisional seizure will lie against a boat running exclusively within the State, for services rendered on board.

APPEAL from the Fifth District Court of New Orleans, *Eggleston*, J.

*R. King Cutler for plaintiff.*—The plaintiff claims $510 and interest, for services of her minor son, Constance, rendered to defendants. The judgment of the lower court is fully supported by the evidence and the law, and should be affirmed.

As to defendant's plea to the jurisdiction, see C. P. Art. 285, § 3, and Art. 289; 5 An. R. pp. 349 to 353.

Plaintiff's privilege : See C. C. 3204, par. 6, and Acts 1858, p. 111, § 1.

As to the pretended abandonment by plaintiff's son, see Acts 1858, pp. 142 and 143, § 2, and R. p. 19. The steward permitted him to go and see his mother.

*R. & H. Marr for defendants and appellants.*—Two things must concur to enable a sailor or other person employed on board a vessel to obtain the writ of provisional seizure. 1. He must have a privilege on the vessel. C. P. 284. 2. The vessel must trade within the State. C. P. 285, 289.

1. Privileges on ships and other vessels are prescribed by the lapse of six months. Act of 1858, p. 111. Five of the eleven months wages claimed were, therefore, prescribed, had ceased to operate as a privilege, at the time the suit was brought. The payments made on account are more than sufficient to extinguish the claim for wages earned in the State of Louisiana; and we respectfully submit that the lien established by the law of Louisiana has no extra-territorial effect, and cannot be extended to services rendered beyond the limits of the State.

2. But if there had existed a privilege in favor of plaintiff, the other indispensable requisite would still be wanting. This writ is the creature of the law, one of the harsh remedies, to be resorted to only in those cases in which it is expressly authorized, and which are determined, so far as ships and vessels are concerned, by Art. 289 of the Code of Practice. See *Smith* v. *Smith*, 2 A. 448; *Roquest* v. *Steamer B. E. Clark*, 12 A. 300.

Art. 289 contemplates two classes of vessels, those trading within the State, and those trading out of the State. The first clause of the article authorises sailors and other persons employed on board vessels "trading within the State," to obtain this writ. The second clause authorizes the provisional seizure "even of ships trading out of the State," at the suit

of those who have furnished materials or made repairs to such ships. Very clearly, therefore, these favored creditors, material men and those who have made repairs, may cause to be provisionally seized both classes of vessels; while sailors and others employed on board can demand the provisional seizure of such vessels only as fall within the description of vessels "trading within the State."

The legislature would not have provided a remedy against vessels which trade wholly without the State; for such vessels would not come within reach of the process of our courts, and could not be provisionally seized. The Article evidently intends to establish a distinction between two classes of vessels, both of which are subject to Louisiana process, and which must, therefore, come to ports in Louisiana. The first class is described as "trading out of the State," and the second class as "trading within the State." The first class is subjected to the writ of provisional seizure at the suit of sailors and others employed on board; while the second class is expressly exempted from such seizure.

It will not do to say that Art. 289 designed to exempt from provisional seizure, at the suit of the crew, merely such vessels as might accidentally be compelled to deviate from their voyages, and be forced into a Louisiana port for repairs, while endeavoring to prosecute their voyages in a trade wholly out of the State of Louisiana, and which did not require them to come within its limits. The object of the article is to authorize the seizure of a certain class of vessels, and to exempt another class from such seizure, at the suit of the crew. One of the requisites of every provisional seizure is, that the debt should be due and exigible. By the maritime law the sailor ships for the voyage; and he cannot claim wages, nor is anything due him for wages, until the voyage is completed. Vessels which are obliged to put into an intermediate port for repairs, have not completed their voyage; and are not liable to be sued by the crew. It would have been very idle, therefore, for the compilers of the Code to have established a distinction by which one class of vessels was subjected to the writ of provisional seizure at the suit of the crew, while another class was expressly exempted from such seizure, if this latter class comprised merely such vessels as accidentally might come into our ports for repairs, while prosecuting voyages wholly out of the State, both the termini of which were in other States, or in foreign countries. That no such idea entered into the minds of the compilers of the Code, or of the legislature, is sufficiently manifest, when we consider that they took care to allow the provisional seizure of such vessels as are subject to the writ, only for debts actually due; and that the wages of the crew of a vessel forced into an intermediate port for repairs, are not due. There could have been no motive for the express exemption of such vessels from seizure by the crew; because they are sufficiently exempted by the requirement that the debt for wages shall be due and exigible.

The terms "within" and "out of" are used as antitheses in Art. 289. "Within" means not beyond, and "out of" means beyond, the limits of the State. The first clause, therefore, restricts the right of provisional seizure to vessels trading not beyond the limits of the State, while the second clause extends the right in favor of two specified classes of creditors, even to vessels trading beyond the limits of the State.

The one class of vessels has both the *termini* of its trade within the State, from one port in the State to another port in the State ; and is, therefore, properly decribed as "trading within the State." The trade of such vessels is not merely in the State, but within the State, not beyond the State, wholly domestic ; and such vessels only are embraced in the first clause of Art. 289.

The other class must necessarily have one *terminus* of its trade in this State, in order to be subject to Louisiana process. The other *terminus* is not in this State, but beyond its limits; and this class is properly described as "trading out of the State," from a port in this State to a port beyond the limits of this State. This constitutes the distinguishing feature of this class of vessels. They do not trade within the State, though they trade in the State ; and this class alone is embraced in the second clause of Art. 289.

The Osceola, therefore, was a vessel trading out of the State, within the meaning and intendment of Art. 289. The proof shows that when she left New Orleans, on the day this boy shipped, she was bound on a voyage to a place out of the State. She went out of the State ; she was regularly trading out of the State ; and she was not, at the time the service of the boy commenced, nor at the time the writ was issued, subject to provisional seizure at the suit of any person employed on board.

The practical importance of this question must be our apology for discussing it at such length. It occurs almost daily in the inferior tribunals; and their decisions upon it are conflicting. This is the first instance in which it has been presented to this court, so far as we know ; and we hope the court will now interpret Article 289 of the Code of Practice, and finally settle its meaning and extent.

HOWELL, J. Plaintiff instituted this suit in the Fifth District Court of New Orleans, to recover the sum of $510, alleged to be due for the wages of her minor son, as cook on the steamboat Osceola, at the rate of thirty dollars per month, for two months from the 5th February, 1859, and fifty dollars per month for nine months thereafter. Upon the usual affidavit, the boat was provisionally seized.

The defendant, McMillan, as master and sole owner, excepted to the jurisdiction of the court, alleging his domicil to be in the parish of Caddo, in this State, which plea was, by consent, tried with the merits. He took a rule to set aside the provisional seizure, on the ground: 1. That the allegations in the petition and affidavit do not authorize the writ; and, 2. That the boat was, during the time for which wages are claimed, in a trade extending beyond the limits of this State, and, for the last nine months of said period, was not within the State. This rule was dismissed, and defendant filed an answer reserving his exception ; pleaded the general denial ; admitted that, on the 10th February, 1859, such a boy shipped on his boat at thirty dollars per month ; set up, as a defence, the second ground of his rule ; alleged a reduction in the wages; several payments on account ; a deduction for lost time, and forfeiture of wages for abandonment before the completion of the last month ; and denied the privilege.

Judgment was rendered in the lower court, dismissing the exception,

and condemning the defendant to pay $326 90, with interest, and privilege upon the boat; from which he appealed.

The first question presented is the plea to the jurisdiction. The defendant's residence is proven to be in the parish of Caddo ; and, according to our jurisprudence and legislation, no personal judgment can be rendered against him, unless he voluntarily submit himself to the jurisdiction. Not having done so, the exception should be maintained, as to a judgment *in personam*. C. P. Art. 162 *et seq*. 5 A. 352.

He contends, in the second place, that his rule should be made absolute, because the character of the claim sued on does not authorize the writ of provisional seizure; and, consequently, no judgment can be rendered against the boat. In support of this position, and to take the case out of the ruling in *Henning* v. *Steamer St. Helena*, 5 A. 352, just quoted, he relies upon Article 289, C. P., in which, he says, a distinction is made between vessels trading "within the State" and those trading "out of the State." The first clause of the article gives to employeés on vessels, *trading within the State*, as well as persons who have furnished materials for, or made repairs to such vessels, the right, when they bring their action against the captain, owner or consignee, to provisionally seize said vessels, to secure the amount of their claims, upon taking the prescribed oath. The second clause declares that "such seizure may be made even of vessels trading *out of the State*, at the suit of persons claiming payment for materials furnished for, or repairs made upon, such vessels." This clause gives to a class of creditors, embraced in the first clause, to wit : *those who furnish materials or make repairs*, a remedy against a description of vessels not included in the first, to wit : *vessels trading out of the State*. The first awards the writ to *both* classes of creditors against one description of vessels ; the second gives it to *one* of those classes against an additional description of vessels.

We can find no case in which this point has been raised ; but we believe that it has been the uniform practice, up to the present time, to grant the writ to the employeés on all vessels where suits have been brought by them in the courts of the State for their wages ; and we are now called upon to give a judicial interpretation to this Article of the Code of Practice.

Article 3204 C. C. establishes a privilege in favor of such creditors. Article 284 C. P. gives to them the right to provisionally seize vessels "navigating within the State;" and Article 289, same Code, points out the manner in which the writ may be obtained; and promises, further, that it may issue against vessels trading out of the State, at the suit of those who have furnished materials for or made repairs upon such vessels.

Had this not been added, we presume the question now before us would not be raised; and the enquiry is, does this clause restrict the former and limit the writ, so far as employeés are concerned, to vessels which do not go beyond the borders of the State, and deny it in those cases where the vessels, though they may have their domicil here, extend their voyages or trade beyond the State limits ?

It is is a rule of interpretation that "the words of a law are to be understood in their most known and usual signification, without attending so much to the niceties of grammar rules as to the general and popular

use of the words (C. C. Art. 14) ; and where its expressions are dubious, its true meaning is to be discovered by considering the reason and spirit of it, or the cause which induced the legislature to enact it." C. C. Art. 18. Applying these rules to the article under consideration, we do not think it a forced construction to hold, that vessels, which have only one terminus of their voyage in the State, trade within the State, in the meaning of the law, and that the second clause of the article was added to provide for vessels which trade wholly out of the State—*les bâtimens qui font le commerce extérieur*—such as may come here simply for repairs ; cases not provided for in the first part of the article. We can discover nothing in the reason or spirit of the law to justify the restricted meaning claimed for it by the appellant. By such a construction, our own citizens, trading entirely within the territorial limits of the State, might be placed in a less favorable position than those whose vessels trade beyond those limits, though it be but a few rods. The object of the legislature evidently was to give those who bring suit in our tribunals, for their wages, the right to seize, without having to furnish bond, the vessels on which they earned them ; and the practice of years, without a doubt having heretofore been raised, has consecrated the meaning which we give to the terms of the law : a meaning which, we think, in no manner infringes the well settled doctrine, that this harsh remedy should be resorted to only in those cases in which it is expressly authorized.

In this view, then, we conclude that the rule was correctly dismissed ; and that, under the decision in the case of *Henning* v. *Steamboat St. Helena*, this action was rightfully maintained as to the boat provisionally seized.

The capacity of the plaintiff was not excepted to in *limine litis*, and it is now too late to raise the objection. See authorities cited in 1 Hennen's Digest (2d ed.), p. 1152, b. No. 1.

On the merits, however, we think the lower court erred in the amount allowed. The claim embraces a period of eleven months, the wages for the last of which were forfeited, under the second section of the act of 1858, page 143, by abandonment before the end of the month ; and the privilege is limited, by the act of the same year (p. 111, § 1), to six months. The wages are shown to be thirty dollars per month, which, for six months, amount to $180 ; deduct from this the wages of the last month, and the payments made on account during the six months, amounting to $103 10, and we have the sum of only $56 90, for which a privilege exists by law.

It is therefore ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed, and proceeding to give such judgment as should have been rendered below, it is ordered, adjudged and decreed, that the exception herein be sustained, so far as to dismiss the action *in personam* against W. McMillan, captain and owner of the steamboat Osceola ; and it is further ordered, that plaintiff have judg: ment, with privilege, against the said steamboat Osceola, her tackle, apparel, etc., provisionally seized herein, for the sum of $56 90, with legal interest from 10th January, 1860, until paid, without prejudice to the right of action, if any exist, for the wages not herein allowed, with privilege ; the defendant to pay the costs of the lower court, and those of this court to be paid by the plaintiff and appellee.